189 So.2d 188 (1966)
RIDGEWOOD GROVES, INC., Appellant,
v.
James A. DOWELL, Father and Administrator of the Estate of Ricky Paul Dowell, a Minor, Deceased, and Roberta L. Dowell, His Wife, Mother of Ricky Paul Dowell, Appellees.
Nos. 6075, 6076.
District Court of Appeal of Florida. Second District.
August 5, 1966.
*189 Fowler, White, Gillen, Humkey & Trenam, St. Petersburg, for appellant.
Bacon & Hanley, St. Petersburg, for appellees.
HOBSON, Judge.
Appellant-defendant takes this appeal from a final judgment entered on a jury verdict in favor of the plaintiff-appellees. The parties will be referred to herein as they appeared in the lower court.
The defendant filed two notices of appeal, one being in Case No. 6075 from the final judgment, and the other being No. 6076 from an unsigned minute book entry. We hereby dismiss appeal No. 6076, as an unsigned minute book entry is not appealable, and proceed to the merits of this appeal in appeal No. 6075.
The plaintiffs brought suit against the defendant for the wrongful death of their minor son under the doctrine of attractive nuisance. The factual situation is summarized as follows: The minor, a 7 1/2 year old boy, was last seen alive by his mother on the afternoon of May 4, 1962. The plaintiffs' home was located near a 20-acre site of land which was being cleared by the defendant for the purpose of constructing residential homes. In the process of preparing the land for the construction of homes, the defendant made two large piles of materials consisting of sand, grass, roots, and palmetto fronds. When the *190 minor son did not return home for supper, the plaintiffs, after searching in vain for him, notified the Sheriff's Department. The Sheriff's Department dispatched a vehicle which had mounted upon it several flood lights. The flood lights were shown upon the above described piles of debris, as well as on a lake some distance from the piles of debris. The search continued until approximately 7:30 A.M. the morning of May 5, when the minor son of the plaintiffs was found buried under the debris of one of the above described piles. The pile in which the minor boy was found was described by various witnesses as being between 30 to 40 feet long up to 75 to 100 feet long. All witnesses describing the height of the pile testified that it was between 13 and 15 feet high. It should be noted that a large blown up picture of the pile was introduced into evidence as Plaintiffs' Exhibit No. 1, which gives a very clear and vivid reproduction of the pile as it appeared on the morning of May 5, 1962. Various witnesses described the pile as having sheer and perpendicular sides, odd shapes and overhangs. The descriptions are verified by Plaintiffs' Exhibit No. 1.
The essential conditions which must be present in order to invoke the benefits of the doctrine of attractive nuisance are set out in the Restatement of Torts, § 339, cited with approval by this court in Banks v. Mason, Fla.App. 1961, 132 So.2d 219:
"`A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
"`(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
"`(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
"`(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"`(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.'"
As to subsection (a), the record reveals that the defendant had actual knowledge that children played on the construction site. In fact, an employee of defendant testified that he had on one or two occasions advised children, other than the minor decedent, to leave the construction area.
As to subsection (c) the minor deceased boy was 7 1/2 years of age at his untimely death, was in the first grade of grammar school and was an average child for his age. As to whether or not the minor decedent was aware of the condition or realized the risk involved in intermeddling in it, we note that the plaintiff called as a witness one Joseph Elliott, a licensed Civil Engineer in the State of Florida since 1957 and it took seven pages of testimony to qualify him as an expert witness in order that he could state his opinion as follows:
"A The sand pile at one time, sir, was undoubtedly in a temporary state of stability. Any pressure or contact or from natural forces could have caused this material to have lost its stability, sir, and a slide would have resulted. There appears to have been a slide right in this area, sir, and also seemed to have been one in here, above the circle which you have on there, sir.
THE COURT: Would it be more or less apt to occur in a pile of this type of material as compared with pure sand?

*191 A It would be more  yes, sir. It would not be more apt to, but it could  let me answer it in this manner, sir: A sand  a pile of clean sand would more than nearly than not would never have been in this shape, sir.
THE COURT: It wouldn't have evened itself out?
A Yes, sir.
THE COURT: The more material that is in it 
A The more extrenuous or diluted material that is in contamination that is in there would cause this sand or this particular material to take odd shapes, overhangs, and such as this, which would not be common to a clean sand, sir. Therefore, it would be  it would be critical in that almost anything could overturn this stability, sir."
Certainly if it takes a qualified expert to state his opinion as to the stability of the pile and what could overturn the stability, a child 7 1/2 years old could not be held to know of the condition or realize the risk involved in coming within the area of the pile.
As to paragraph (d), there was testimony that on the construction site there were numerous small piles of sand and material which did not create a condition such as existed in the large pile with which we are concerned. Certainly the risk involved to young children playing around the large pile is greater than the benefit to the defendant of maintaining the large piles in their condition. The defendant could without any inconvenience to him have piled this material in numerous small piles which would not create a dangerous condition.
We come now to paragraph (b) which the defendant contends is lacking in the instant case. Defendant relies on the case of Edwards v. Maule Industries, Inc., Fla. App. 1962, 147 So.2d 5. Under the holding of the Maule Industries case the defendant submits that in no event can a pile of sand become of itself an attractive nuisance. With this contention we do not agree. In the Maule case, supra, the court stated the issue to be "Appellant and appellee agree that the issue is whether or not the sand pile as described constituted an attractive nuisance." The court held that a large pile of sand left without adequate or sufficient supports so that anyone Walking on said sand was likely to topple and fall and sink within said sand is not in and of itself an attractive nuisance. With this we agree.
In Hunter v. J.C. Turner Lumber Co., 187 F. Supp. 646 (N.D.Fla. 1960), the United States District Court for the Northern District of Florida held that stacked lumber was not an attractive nuisance but noted there was an absence of any allegation that the lumber was so stacked as to constitute a hidden defect to trap the unwary. Certainly if lumber can be so stacked as to constitute a hidden defect to trap the unwary, a 15 foot high pile of roots, sand, grass and palmetto fronds with perpendicular or sheer sides and overhangs could constitute a hidden defect to trap the unwary.
We hold that the pile of materials in question as described by the various witnesses could be determined by the jury under proper instructions from the court to be an attractive nuisance. This question of fact was submitted to the jury in this case under proper charges by the court and was resolved in favor of the plaintiffs. This was the sole prerogative of the jury, which finding we cannot disturb.
For the reasons set forth above the final judgment is affirmed.
ALLEN, C.J., and SHANNON, J., concur.